UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

_____

SCOTT EDWARD ZIEGLER,                              Case No. 13-cv-609-PP

          Petitioner,

v.

JIM SCHWOCHERT,

          Respondent.
_____

**ORDER DENYING PETITIONER'S REQUEST TO REQUIRE COUNSEL TO CRAFT PETITION (DKT. NO. 51), LIFTING THE STAY, SETTING A SCHEDULING ORDER, AND DENYING PETITIONER'S MOTION FOR DISCOVERY, INSPECTION, RELEASE OF DOCUMENTS, AND EVIDENTIARY HEARING (DKT. NO. 52)**
_____

The petitioner filed his petition for *habeas* relief on May 31, 2013—almost two years ago. Dkt. No. 1. The same day, he filed a motion asking the court to appoint a lawyer to represent him, and asking the court to stay the federal *habeas* proceedings while he finished exhausting claims in state court. Dkt. No. 3. The respondent did not oppose the petitioner's request for a stay, Dkt. No. 12, and so on July 12, 2013, Judge Adelman (who was, at that time, assigned to preside over the case) issued the stay, Dkt. No. 13. Judge Adelman ordered that every ninety (90) days, the petitioner had to update the court on what was happening with his state court proceedings, and that he also must notify the court within thirty (30) days after he'd exhausted all his remedies in state court. Id.

1

A year and a half later, the case was reassigned to me, Judge Pepper. During that year and a half, the petitioner had filed numerous 90-day updates, but continued to indicate that his state case still had not been resolved. I reviewed all of the updates the petitioner had filed, and concluded that the petitioner had, in fact, exhausted the claims he was trying to bring in the federal *habeas* case. Accordingly, I vacated the stay, and screened the petition. Dkt. No. 41. I allowed the petitioner to proceed on a Sixth Amendment ineffective assistance of counsel claim, and set a briefing schedule. Id.

The petitioner filed a motion asking me to reinstate the stay. Dkt. No. 43. He argued that he still had state *habeas* claims wending their way through the state court system. He asked me to appoint counsel to assist him in conducting numerous tasks, including helping him to organize his very large case file, helping him separate out the issues/claims he could present (including, he argued, some claims that never had been presented in federal court before), helping him get sealed juvenile records "relevant to [his] state and federal actions," obtaining CDs and DVDs in his state court case file, obtaining CDs and DVDs in the possession of the state, helping him gain access to discovery materials, and helping him to cut down the size of his briefs. Id. In several places, the petitioner argued that he had so many issues floating around in his head that he was overwhelmed, and needed to narrow down the issues. For these reasons, he asked me to appoint counsel to represent him. Id.

I granted the petitioner's request to reconsider my decision vacating the stay. Dkt. No. 44. I noted in the order that the petitioner's pleadings were

2

chock-full of questions about procedure, but that I could not give him legal advice. Id. at 3. I also explained to the petitioner that the law did not allow me to consider a *habeas* petition that contained both exhausted and unexhausted claims. Id. at 4. I concluded, "At this point, the court cannot tell exactly what claims the petitioner has yet to exhaust, or whether there was good cause for his failure to exhaust his remedies as to those claims in the two years that this case has been stayed." I stated that I would "give the petitioner one more chance to make clear to the court which claims he believes he has not exhausted, and to provide good cause for failure to exhaust those claims." Id. at 5-6.

I also granted the petitioner's request that I appoint counsel to assist him. Id. at 8. Given the fact, however, that appointment of counsel in *habeas* cases is very rare, that there are limited resources for appointing counsel in civil cases, and that attorneys who accept such appointments often represent numerous other clients, I tried to make clear that I was appointing counsel for a very limited purpose. I stated,

> The court notes, however, that it grants the appointment of counsel only for a limited purpose. The court asks that counsel assist the petitioner in amending his petition to include a succinct statement of the claims he intends to bring in his federal *habeas* case, a statement of whether he has exhausted those claims in federal court, and if he has not, an explanation of good cause for his failure. The court also asks counsel to assist the petitioner in deciding—and stating—how he would like to proceed (does he want the court to continue the stay, to lift the stay and proceed on the exhausted claims, to dismiss the petition, etc.).

Id.

3

Magistrate Judge Duffin appointed Attorney Matthew S. Pinix to represent the petitioner for this limited purpose. Dkt. No. 46. After Attorney Pinix was appointed, I issued an order requiring the petitioner to inform me no later than December 21, 2015 of how he would like to proceed. Dkt. No. 47.

On December 18, 2015—a couple of days before the deadline for the petitioner to tell me how he wanted to proceed—Attorney Pinix filed a letter, asking me to clarify the purpose of his appointment. Dkt. No. 49. I responded by issuing an order attempting, again, to explain the limited scope of the representation. Dkt. No. 50. I thanked Attorney Pinix for agreeing to help the petitioner. Id. at 4-5. I told Attorney Pinix that he was not appointed to edit the petitioner's grammar. Id. at 5. I also told him that he did not have to assess the petitioner's ineffective assistance of counsel claim (which I'd already decided that he *had* exhausted, and *could* proceed on) to see whether it had merit—that is my job. Id. at 5-6. I told Mr. Pinix that the concern that had prompted me to appoint counsel was my concern "that the petitioner did not understand what it meant to have 'exhausted' remedies, and did not understand that in our circuit, a petitioner can't bring both exhausted and unexhausted claims in one *habeas* petition." Id. at 6.

I went on to explain that "[t]he fact that the petitioner is seeking, over two years after he filed his *habeas* petition, to file a state *habeas* petition on the ineffective assistance of his appellate counsel, left me wondering whether he misunderstood what was required in the way of exhaustion of claims." Id. at 7. I also explained that I was concerned that the petitioner was attempting to

4

raise new claims that he'd never raised in any state court proceeding. Id. I concluded with the following:

> . . . I had hoped that Mr. Pinix might advise the petitioner on what "exhaustion of remedies" means. I had hoped he might advise the petitioner on the appropriateness of adding "new" claims to a *habeas* petition, given the requirements of AEDPA and the exhaustion requirement. I had hoped he might advise the petitioner on the law regarding petitions that included both exhausted and unexhausted claims, and the options the Seventh Circuit has given petitioners who have both exhausted and unexhausted claims, so that the petitioner might decide among the following options:
>
> (a) reiterating his request that I stay the federal *habeas* proceeding to let him exhaust state remedies (which, from a legal standpoint, requires some consideration of whether the petitioner appears to have any unexhausted remedies; that would entail appointed counsel looking at the documents the petitioner provided plus anything counsel can tell from WCCAP and giving the petitioner his advice on whether it appears that a claim is exhausted;
>
> (b) telling me that he was willing to just proceed on the state petition as it stands, understanding that if he *does* have unexhausted claims, he will have to forego them by electing this option (if, for example, he's exhausted his ineffective assistance claim regarding his trial counsel, he may decide to just proceed in federal court on that claim, and wait for another day to file other claims that may not be exhausted);
>
> (c) filing an amended petition to include any claims which he's exhausted since the time he filed the original petition (and letting go everything else, for the purposes of the federal case);
>
> (d) asking the court to dismiss this federal petition, so that he can resolve his issues in state court (which would likely have consequences for any exhausted claims); or
>
> (e) ask me for more time to make the decision among the above choices.
>
> I appointed counsel for a limited purpose—so that an attorney could try to help Mr. Ziegler understand exhaustion of claims, and to advise and counsel him on the practical

5

> consequences described above. Mr. Ziegler has asked me, several times, to appoint him counsel, and I've done so for this limited purpose. Mr. Pinix asks what he should do if Mr. Ziegler does not wish to follow his advice on any of these matters. I suggest that if Mr. Pinix concludes, after sharing his knowledge and understanding and counsel with Mr. Ziegler, that Mr. Ziegler wishes to go his own way, Mr. Pinix notify me that he believes his services are no longer of assistance, and I will allow him to withdraw. If Mr. Pinix is able to help Mr. Ziegler make a decision about which of these options he'd like to choose, Mr. Ziegler may implement the option he's chosen, and Mr. Pinix's obligation is concluded.

Id. at 7-9. I expressed my hope that the petitioner would take advantage of Mr. Pinix's experience and counsel, and I extended the deadline for the petitioner to tell me what he wanted to do until March 31, 2016. Id. at 9.

Now, the petitioner has filed a letter, complaining that Attorney Pinix will not answer questions about anything other than exhaustion issues. Dkt. No. 51. The petitioner states that he can't tell Mr. Pinix what additional claims he wants to raise in state court, because that will depend on what the state court decides with regard to certain appeals he has pending regarding discovery demands. Id. He talks, in this letter, about filing what he calls a "Knight's petition." Id. The court believes that he is talking about filing a new writ of *habeas corpus* in the Wisconsin Court of Appeals, pursuant to the procedure outlined in State v. Knight, 168 Wis.2d 509 (Wis. 1992). He talks about obtaining documents, and obtaining discovery, and holding evidentiary hearings. Id. at 2. He expresses his view that it would be "highly beneficial to all parties involved if Atty Pinix could assist me in turning my nearly incomprehensible habeas petition into something clear and concise." Id. He also states that, after he is finished with the several state court proceedings he

6

either has filed or plans to file, he would "still ask that after or during your final review of my petition that you simply delete any unexhausted claims and allow me to proceed on the exhausted claims. To my knowledge, doing it this way is common practice in the federal court system." Id.

The petitioner's letter has convinced me that I made the right decision back in October of last year, when I concluded that he had exhausted all of his state-court remedies and that it was time to lift the stay. Dkt. No. 41. In that order, I noted that the petitioner had filed a 107-page petition, listing sixty-eight grounds for relief, all of which focused on one issue—the petitioner's belief that his state trial and appellate lawyers were ineffective, "and thus that he was denied his Sixth Amendment right to effective assistance of counsel." Id. at 4-5. Over and over in his petition, he argued that his trial lawyer and his appellate lawyer didn't object to issues, didn't raise issues that should've been raised, didn't make arguments that should have been made, made the wrong arguments. He had enough facts to fill 107 single-spaced pages with information about all the things that the trial and appellate lawyers did wrong, or did not do. He appealed his conviction all the way up through the Wisconsin Supreme Court. Id. at 3. He also filed several state *habeas* petitions at all three levels of the state court, and a post-conviction motion, which was dismissed by the Supreme Court in June of 2015. Id. at 4. The petitioner has litigated his ineffective assistance claim at every stage of the Wisconsin court system, more than once—he has exhausted his remedies as to that claim.

7

It appears to me—and I expressed this concern in prior orders—that the petitioner now is off on other tangents. He is now pursuing claims that certain items of discovery weren't turned over to him. Those aren't ineffective assistance of counsel claims—they relate to his right to obtain exculpatory (or inculpatory) evidence. He's talking about filing new *habeas* petitions in the Wisconsin Court of Appeals; almost *three years* after filing this federal *habeas* petition, he's filing new *habeas* claims in state court. The petitioner is not exhausting his remedies on the claims he's brought in this federal case; he's raising new issues, and making new claims, that he did not raise in this federal case. And he is asking that I require appointed counsel to assist him in doing that—something I specifically tried to make clear that I would not allow when I agreed to appoint counsel for a limited purpose.

The petitioner also seems to ignore the fact that I've stated—more than once—that under the law in the Seventh Circuit, I *cannot* accept a petition that contains exhausted and unexhausted claims. His suggestion, in this letter, that I take whatever petition he eventually files and "simply delete any unexhausted claims" is not one of the options the Seventh Circuit gives district court judges.

It is long past time for this case to move forward, and it will. I am going to lift the stay, and this time, I will not entertain any motions to reinstate it. I am going to relieve Mr. Pinix of his duties in advising the petitioner on exhaustion law. I am going to set a briefing schedule. I also will not answer any future legal questions the petitioner may pose in future letters or motions about how to obtain documents, or how to file certain things in state court.

This order lays out the next steps in the case: if the respondent files an answer, the petitioner will file his brief, after which the respondent will file his brief, and then the petitioner may (if he wants to) file a reply. If the respondent files a motion to dismiss, the petitioner will file a response, and the respondent may file a reply. There are page limits on these filings, and the filings must be double-spaced. The petitioner will have to struggle, as best he can, to make his arguments on the same number of pages that other *habeas* petitioners are allowed.

I also am going to deny the petitioner's motion for discovery, inspection, release of documents and request for an evidentiary hearing. Dkt. No. 52. Rule 6 of the Rules Governing Section 2254 Cases in the United States District Courts leaves to the district court's discretion the decision whether to authorize a party to conduct discovery in a *habeas* case. The party seeking the discovery must state reasons for the request. Rule 6(b). And the court can require the requesting party to pay the expenses of obtaining the discovery. Rule 6(c).

The petitioner says in his motion that he is entitled to discovery because (a) he's entitled to develop his ineffective assistance claim, and (b) the prosecution has to provide exculpatory evidence under Supreme Court law. As I indicated earlier, the petitioner filed a 107-page petition. It is hard to imagine what further facts he expects to uncover to support his ineffective assistance claim. If he wishes to argue, in his brief, that his counsel was ineffective in obtaining discovery to which he was entitled, he certainly may make that argument—he doesn't need the actual discovery to do it.

9

The forty-five page, single-spaced discovery demand he attached to his motion basically asks for the discovery relevant to his criminal trial in the state court—evidence that certainly might be relevant if he were trying to challenge the sufficiency of the evidence used to convict him, but is not relevant to a question of whether or not his trial or appellate lawyers provided ineffective assistance of counsel under the Sixth Amendment.

In fact, what the petitioner really appears to be hinting at is that, as I've indicated above, despite the fact that he didn't raise this issue in his petition, he wants to go back through the state court system to raise a new claim—that the prosecution did not give him all of the evidence it was required to give him under the Supreme Court's decision in Brady v. Maryland, 373 U.S. 83 (1963). That is *not* an ineffective assistance of counsel claim—it is a different claim altogether. If, after the petitioner works his way through the state court system on that claim, he wants to file a new federal *habeas* petition raising that issue, he can do so at that time. But the court will not order discovery for issues the petitioner is litigating in state court, and he does not need this discovery to argue—as he has done for 107 pages already—that his trial and appellate lawyers did not effectively represent him.

The court **DENIES** the petitioner's letter request that the court require Attorney Pinix to help him edit his petition, or gather discovery, or help him decide what issues to raise in state court. Dkt. No. 51.

10

Case 2:13-cv-00609-PP   Filed 02/17/16   Page 10 of 12   Document 54

The court **ORDERS** that Attorney Matthew Pinix is **TERMINATED** as appointed counsel for the petitioner; Mr. Pinix should submit his CJA voucher when it is ready.

The court **ORDERS** that the stay of proceedings that the court imposed in its order of October 16, 2015 (Dkt. No. 44) is **LIFTED**.

The court reiterates its finding of October 16, 2015 that the petitioner may proceed on one claim—ineffective assistance of his trial and appellate counsel in violation of his rights under the Sixth Amendment.

The court **ORDERS** that within sixty (60) days of the date of this order, the respondent shall **ANSWER OR OTHERWISE RESPOND** to the petition, complying with Rule 5 of the Rules Governing §2255 Cases, and showing cause, if any, why the writ should not issue.

The court **ORDERS** that the parties must comply with the following schedule for filing briefs on the merits of the petitioner's claims:

(1) the petitioner has **forty-five (45) days** after the respondent files his answer to file the petitioner's brief in support of his petition;

(2) the respondent has **forty-five (45) days** after the petitioner files his initial brief to file the respondent's brief in opposition; and

(3) the petitioner has **thirty (30)** days after the respondent files his opposition brief to file a reply brief, if the petitioner chooses to file such a brief.

If, instead of filing an answer, the respondent files a dispositive motion, the respondent must include a brief and other relevant materials in support of the motion. The petitioner then must file a brief in opposition to that motion

within **forty-five (45) days** of the date the respondent files the motion. If the respondent chooses to file a reply brief, he must do so within **thirty (30) days** of the date the petitioner files the opposition brief.

Pursuant to Civil Local Rule 7(g), briefs in support of or in opposition to the *habeas* petition and any dispositive motions shall not exceed **thirty (30)** pages, and reply briefs may not exceed **fifteen (15)** pages, not counting any statement of facts, exhibits and affidavits. The court further **ORDERS** that all briefs in support or opposition or reply shall be **double-spaced**.

The court **DENIES** the petitioner's Motion for Discovery, Inspection, Release of Documents, and Evidentiary Hearing. Dkt. No. 52.

Pursuant to the Memorandum of Understanding between the Attorney General and this court, the court will send a copy of the petition and this order to the Attorney General for the State of Wisconsin and to the Warden of Dodge Correctional Institution.

Dated in Milwaukee, Wisconsin this 17th day of February, 2016.

BY THE COURT:

_____
HON. PAMELA PEPPER
United States District Judge