UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

SCOTT EDWARD ZIEGLER,

        Petitioner,

v.

JIM SCHWOCHERT,

        Respondent.

Case No. 13-CV-609-PP

---

**ORDER GRANTING RESPONDENT'S MOTION TO DISMISS ALL BUT GROUND SIXTY OF THE PETITION FOR WRIT OF *HABEAS CORPUS* (DKT. NO. 57)**

---

## I. BACKGROUND

Scott Ziegler filed a petition for a writ of *habeas corpus* under 28 U.S.C. §2254. Dkt. No. 1. Although the case originally was assigned to Judge Adelman, it was reassigned to Judge Pepper on December 30, 2014. The respondent has filed a motion to dismiss the petition, which the parties have fully briefed. For the reasons stated below, the court dismisses all of the petitioner's claims other than Ground Sixty, and sets a briefing schedule.

### A. <u>The Original Criminal Case</u>

In 2009, the petitioner was convicted in Waukesha County of repeated first-degree sexual assault, interference with child custody, two counts of child enticement, second-degree sexual assault through force, seven counts of second-degree sexual assault, and two counts of child abuse. Dkt. No. 58-1 at

1

1. The trial court sentenced the petitioner to serve thirty-five years of incarceration and twenty years of extended supervision. Id.

The petitioner, through counsel, pursued a direct appeal. Dkt. No. 58-5. On November 16, 2011, the Wisconsin Court of Appeals noted that the petitioner had raised several issues on appeal, but certified only one issue to the Wisconsin Supreme Court: whether the petitioner's conviction for interference with child custody had to be overturned because he lacked initial permission to have the child. Id. at 1. The appellate court noted that it could not decide the other issues the petitioner had raised without first answering the certified question. Id. at 4-5.

On July 3, 2012, the Wisconsin Supreme Court decided that the plain language of the statute governing convictions for interference with child custody did not require initial permission. Dkt. No. 58-6 at 37. Consequently, it affirmed the petitioner's conviction on that charge, concluding that the evidence was sufficient to convict the petitioner of interference with child custody. Id. The Court then addressed the other issues that the petitioner raised on appeal. Id. It concluded that (1) the multiple counts of sexual assault were not multiplicitous, (2) the trial court's admission of the petitioner's mug shot at trial did not deprive the petitioner of a right to fair trial, and (3) "the circuit court appropriately exercised its discretion in ordering [the petitioner] to wear a stun belt at trial." Id. at 37-38.

### B. The Federal Petition

The petitioner filed this federal petition a little over ten months later, on May 31, 2013. Dkt. No. 1. On July 12, 2013, Judge Adelman (then presiding over the case) stayed the petition to allow the petitioner to exhaust certain claims in state court. Dkt. No. 13.

### C. State Post-Conviction Proceedings

On October 17, 2013, a few months after Judge Adelman stayed the federal proceedings, the petitioner filed a post-conviction motion in Waukesha County Circuit Court, pursuant to Wis. Stat. §974.06.[1] Dkt. No. 58-17 at 149. On January 6, 2014, the circuit court summarily denied the motion. Id. The District II Court of Appeals summarily affirmed. Dkt. No. 58-20 at 1. The appellate court found that the petitioner's §974.06 motion had "fail[ed] to establish a sufficient reason for failing to raise [his post-conviction] claims as part of his direct appeal," and thus, that the petitioner's post-conviction claims were procedurally barred. Id. The Wisconsin Supreme Court denied the petition for review three months later. Dkt. No. 58-24.

### D. The Resumption of Federal Proceedings

In February 2016, after a series of fits and starts that the court will describe below, the court issued an order concluding that the petitioner had

---

[1] The petitioner pursued multiple state court challenges to his conviction, but the court will focus only on the challenge relevant to this motion to dismiss. Dkt. No. 58 at 2. This may be a distinction without a difference; the petitioner asserts that he raised all sixty-eight of his claims in the post-conviction motion. Dkt. No. 63 at 1.

3

exhausted his state-court post-conviction remedies, and lifted the stay. Dkt. No. 54 at 11.

The petition listed sixty-eight grounds for *habeas* relief. Dkt. No. 1. On October 8, 2015, the court issued an order screening the petition. Dkt. No. 41. In that order, the court noted that while the petition was 107 pages long and contained sixty-eight grounds, it raised only one argument: "that the petitioner's state-court trial and appellate lawyers were ineffective, and thus that he was denied his Sixth Amendment right to effective assistance of counsel." Id. at 4-5. The order concluded, "the petitioner may proceed on one claim, ineffective assistance of counsel in violation of his rights under the Sixth Amendment." Id. at 5.

After the court issued that order, the petitioner filed a letter informing the court that he continued to try to exhaust his state-court claims, dkt. no. 42, and a "response" indicating that he was not ready to proceed in federal court, dkt. no. 43. The court construed these pleadings as a request that the court reconsider the order lifting the stay; it granted that request, and appointed counsel to represent the petitioner. Dkt. No. 44 at 8-9. The court also vacated the scheduling order it had issued on October 8 (which meant that the respondent did not have to comply with the answer and briefing deadlines). Id. at 9.

Appointing counsel to assist the petitioner did not help much—the petitioner demanded more of counsel than what the court had appointed counsel to do, and the petitioner complained that he was not happy with

counsel's representation. Accordingly, on February 17, 2016, the court issued an order which stated, "The petitioner's letter has convinced me that I made the right decision back in October of last year, when I concluded that he had exhausted all of his state-court remedies and that it was time to lift the stay." Dkt. No. 54 at 7. The order relieved counsel of his obligation to represent the petitioner, denied several motions the petitioner had filed, and reiterated the court's finding "that the petitioner may proceed on one claim—ineffective assistance of his trial and appellate counsel in violation of his rights under the Sixth Amendment." Id. at 11. The court ordered the respondent to answer or otherwise respond to the petition within sixty days, and set a new briefing schedule. Id.

The respondent, rather than answering the petition, filed a motion to dismiss for procedural default. Dkt. No. 57. The petitioner filed a thirty-page opposition brief, dkt. no. 63, accompanied by a 127-page appendix, dkt. no. 63-1. The respondent filed a reply brief, dkt. no. 65, and the court now considers the motion to dismiss.

## II. DISCUSSION

### A. **Exhaustion Requirement and Procedural Default**

Under 28 U.S.C. §2254(b)(1)(A), federal courts cannot grant *habeas* relief unless the petitioner exhausts the available state court remedies. Generally, courts consider a claim exhausted if a petitioner presents it through one "complete round of the State's established appellate review process." Woodford v. Ngo, 548 U.S. 81, 92 (2006) (citation omitted). Taking the case all the way to

5

the state supreme court is not enough, however; when "state-court remedies are no longer available because the prisoner failed to comply with the deadline for seeking state-court review or for taking an appeal, those remedies are technically exhausted, but exhaustion in this sense does not automatically entitle the habeas petitioner to litigate his or her claims in federal court." Id. at 93 (citation omitted). Procedural default also may occur if the petitioner timely raises the claim with the appropriate court but fails to satisfy the state court's other procedural requirements. Lewis v. Sternes, 390 F.3d 1019, 1026 (7th Cir. 2004).

A federal court cannot review procedurally barred claims in *habeas* proceedings unless the petitioner can demonstrate both cause and prejudice, or that denying the petition will result in a miscarriage of justice. Id. As a result, Rule 5(b) of the Rules Governing Habeas Corpus Cases Under Section 2254 states that a respondent's answer to a *habeas* petition "must state whether any claim is barred by . . . a procedural bar . . . ." Here, the respondent asserts that the petitioner's claims, with the exception of two that he raised on direct appeal, are subject to a procedural bar. Dkt. No. 57. As discussed below, the court agrees that the petitioner has procedurally defaulted on the majority of his claims, and finds that the petitioner has not demonstrated cause and prejudice, or shown that failure to grant the petition would constitute a miscarriage of justice.

B.  **Status of the Petitioner's Claims**

As the court held in both its October 8, 2015 screening order and its February 17, 2016 order lifting the stay and setting a briefing schedule, nearly all of the petition's sixty-eight grounds focus on one argument – that the petitioner's trial and appellate counsel were inadequate, and thus that he was denied his Sixth Amendment right to effective assistance of counsel. The two grounds that don't focus on the ineffectiveness of his counsel are stated in ground sixty-eight, paragraphs B and C. In paragraph B, he alleges that the state court violated his due process rights by allowing him to appear before the jury wearing a stun belt. Dkt. No. 1 at 101. Paragraph C alleges that the court erred when it allowed a witness to identify him at trial using his mug shot. Id.

The respondent has moved to dismiss all of the petitioner's claims except the stun belt and mug shot claims. Dkt. No. 58 at 9. He argues that the petitioner has procedurally defaulted on all of his other claims.

C.  **The State Court Clearly and Expressly Declined to Review the Petitioner's Claims Not Raised on Direct Appeal.**

The respondent argues that the petitioner procedurally defaulted on all but the stun belt and mug shot claims by, among other things, failing to raise them during his direct appeal. Dkt. No. 58 at 10, 12. A procedural default occurs when the last state court that issued judgment "'clearly and expressly' states that its judgment rests on a state procedural bar." Harris v. Reed, 489 U.S. 255, 263 (1989) (quoting Caldwell v. Mississippi, 472 U.S. 320, 327 (1985)). It is not enough for a state court to refer to a procedural bar as one of many reasons why the claim cannot prevail. Coleman v. Thompson, 501 U.S.

722, 729 (1991). In order to preclude federal review, the procedural bar must be "independent of the federal question and adequate to support the judgment." Id. A bar is independent "when the court actually relied on the procedural bar as an independent basis for its disposition of the case." Thompkins v. Pfister, 698 F.3d 976, 986 (7th Cir. 2012) (citing Kaczmarek v. Rednour, 627 F.3d 586, 592 (7th Cir. 2010)). A bar is adequate "when it is a firmly established and regularly followed state practice at the time it is applied." Id.

The respondent argues that failing to raise grounds during a direct appeal results in an adequate and independent procedural bar. Dkt. No. 58 at 10, 12. In support, he cites State v. Escalona-Naranjo, 517 N.W.2d 157, 163-64 (Wis. 1994). There, the Wisconsin Supreme court held that a prisoner is prohibited from raising an ineffective assistance of trial counsel claim in a post-conviction motion, absent sufficient reason, if the claim could have been raised previously during direct appeal. Id. Since then, the Seventh Circuit has recognized the Escalona-Naranjo bar as an adequate and independent procedural rule when applied to situations similar to the petitioner's predicament. See Marcum v. Smith, No. 98-1606, 1998 WL 894661, *1 (7th Cir. 1998) ("We have held-in a case the state's brief does not cite-that although *Escalona-Naranjo* is an 'independent' state ground of decision, it is 'adequate' to support a defense of forfeiture only when the direct appeal in state court was taken after *Escalona-Naranjo* came down.") (citing Liegakos v. Cooke, 106 F.3d 1381, 1385 (7th Cir. 1997)).

8

In this case, the Wisconsin Court of Appeals found that the petitioner failed to "establish a sufficient reason for failing to raise these claims as part of his direct appeal, [thus,] they are procedurally barred." Dkt. No. 58-20 at 1. In support, the court cited State v. Escalona-Naranjo, and Wis. Stat. §974.06. Id. It appears, therefore, that the petitioner procedurally defaulted the claims raised in that post-conviction motion.

The petitioner objects that the court should consider his claims because the state court misread his post-conviction motion. Dkt. No. 63 at 5. To some extent, the petitioner may be correct, because it seems that he did raise two of the claims addressed on direct appeal in his post-conviction motion. The respondent accounted for this error, however, by declining to challenge those two claims. Dkt. No. 58. Despite this, the petitioner argues that the appellate court erred by not holding an evidentiary hearing and that it misread the record when it failed to recognize that the petitioner provided a sufficient reason for his failure to raise his claims on direct appeal. Dkt. No. 63 at 6.

Assuming for argument that the petitioner is correct that the state court "misread" his petition, it does not change the outcome. Generally, if a state court imposes a procedural bar, the petitioner may not challenge the correctness of the bar in a *habeas* petition. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.")

9

(citations omitted). Nevertheless, a federal court may review a state court finding on state procedural law if the finding is an "obvious subterfuge to evade consideration of a federal issue." Mullaney v. Wilbur, 421 U.S. 684, 691 n.11 (1975) (citations omitted). The Seventh Circuit also has declined to enforce a procedural bar when the record clearly showed that the state court erred in its belief that the petitioner did not raise and argue an issue on direct appeal. Kubat v. Thieret, 867 F.2d 351, 366 n.11 (7th Cir. 1989).

It is not clear to this court that the state appellate court erred when it imposed the procedural bar and declined to hold an evidentiary hearing. The Wisconsin appellate court concluded that the petitioner's argument that his counsel kept him from raising his claims on direct appeal was not sufficiently developed. Dkt. No. 58-20 at 4. This court does not find that the state appellate court made any obvious errors when interpreting the brief. Dkt. Nos. 58-17, 58-19.

The petitioner also argues that his ineffective assistance claim is not barred because this court issued a screening order allowing him to proceed on that claim. Dkt. No. 63 at 7-8. It is true that on February 17, 2016, this court issued an order allowing the petitioner to proceed on his ineffective assistance claim. Dkt. No. 54. The court based the order on the court's previous finding in its October 8, 2015 screening order. Dkt. No. 54 at 11. In the October 8 order, the court made a preliminary finding that the petitioner's ineffective assistance claim could proceed. Dkt. No. 41 at 4. The court made clear at that time, however, that "it has not made a full review of whether the plaintiff properly

exhausted his claim or whether he has procedurally defaulted on the claim; the respondent may raise objections to exhaustion or default in his pleadings." Id. at 4. The respondent now has raised a valid exhaustion claim. The fact that the court preliminarily allowed the claim to proceed does not change the fact that the petitioner procedurally defaulted on most of his claims.

Finally, the petitioner argues that the state procedural rules "frustrate the exercise of federal constitutional rights." Dkt. No. 63 at 29. When a litigant has a reasonable opportunity to present his issues to the state court, the Supreme Court will not set aside required procedures. Central Union Tel. Co. v. City of Edwardsville, 269 U.S. 190, 194-95 (1925). In this case, the petitioner had an opportunity to present his claims during his direct appeal. He failed to do so. The state appellate court also might have considered his claims if he had provided a sufficient reason why he failed to raise the claims during his direct appeal. It was the petitioner's own failures, not the state procedural rules, that frustrated his ability to pursue his federal claims.

Accordingly, absent a showing of cause and prejudice or manifest injustice, the court cannot review the procedurally defaulted claims.

> **D. The Petitioner Has Not Demonstrated Cause and Prejudice, or Shown that Foreclosing Relief on the Procedurally Defaulted Claims Will Result in a Manifest Injustice.**

A petitioner can overcome a procedural default by demonstrating both cause and prejudice, or showing that denying the petition will result in a miscarriage of justice. Lewis, 390 F.3d at 1026. Neither argument saves the petitioner's procedurally defaulted claims.

11

> *1.   The petitioner failed to demonstrate prejudice, and the petitioner's sleep apnea does not provide sufficient cause for his failure to include his claims in his direct appeal.*

"Cause for a default is ordinarily established by showing that some type of external impediment prevented the petitioner from presenting his federal claim to the state courts." <u>Lewis</u>, at 1026 (citing <u>Murray v. Carrier</u>, 477 U.S. 478, 488 (1986)). "Prejudice is established by showing that the violation of the petitioner's federal rights 'worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" <u>Id.</u> (citing <u>United States v. Frady</u>, 456 U.S. 152, 170 (1982))(emphasis in original). When determining prejudice, a petitioner must show actual prejudice. <u>U.S. ex rel. Nitz v. Anglin</u>, No. 11 C 1904, 2014 WL 831610, at *17 (N.D. Ill. Mar. 4, 2014). A petitioner must explain to the court how particular actions would have changed the outcome. <u>Id.</u> ("Petitioner's vague allegations that his appellate counsel was ineffective for denying Petitioner access to discovery materials so that he could aid in his own appeal does not demonstrate that he suffered any actual prejudice as a result; he has not identified the discovery materials he needed, nor explained how access to them would have made a difference.").

The petitioner argues that his sleep apnea caused all of his procedural defaults in state court. Dkt. No. 63 at 4-5. The petitioner was represented by counsel during his direct appeal. It is not clear how the fact that the petitioner suffers from sleep apnea could cause his counsel's failure to include claims in

the direct appeal briefing. Even if sleep apnea somehow caused the petitioner's failure to raise the claim on appeal, the petitioner does not explain how that failure caused him prejudice. Id. The court could presume that it was ineffective assistance of counsel, and not sleep apnea, which caused his procedural defaults. But ineffective assistance provides cause only if the petitioner first exhausts that claim in state court. Murray, 477 U.S. at 489 (holding that when cause is ineffectiveness of appellate counsel, the underlying ineffectiveness claim must have itself been exhausted in state court.). Because the petitioner procedurally defaulted his ineffective assistance of counsel claim, and did not provide cause or prejudice for failing to do so, he cannot use it to establish cause for the rest of his claims.

> *2. The petitioner has not demonstrated that denial of the petition would result in a manifest injustice.*

The petitioner also argues that if this court declines to review his claims after it already has issued a screening order allowing one claim to proceed, this would result in manifest injustice. Dkt. No. 63 at 2. "The fundamental-miscarriage-of-justice exception applies only in the 'extremely rare' and 'extraordinary case' where the petitioner is actually innocent of the crime for which he is imprisoned. Gomez v. Jaimet, 350 F.3d 673, 679 (7th Cir. 2003) (citing Schlup v. Delo, 513 U.S. 298 (1995)). To support a colorable claim of actual innocence, the petitioner must establish that "it was more likely than not that no reasonable juror would have convicted him in light of the new evidence." Id. at 679 (quoting Schlup, at 327). The petitioner needs to present evidence "so strong that a court cannot have confidence in the outcome of the

13

trial unless the court is also satisfied that the trial was free of nonharmless constitutional error." Schlup, at 316.

As stated above, the screening order is only a preliminary determination that a petitioner *might* have a claim. It is not a finding that he *does* have a claim, or that the claim has merit. Further, the petitioner fails to argue, or provide evidence, that he is actually innocent. See Dkt. No. 63 at 2-4. The petitioner has not overcome the procedural default. The court will dismiss all of his claims except Ground Sixty, to the extent it discusses the stun gun and mug shot errors.

## III. CONCLUSION

The court **GRANTS** the respondents' motion to dismiss all but Ground Sixty of the claims in the petition. Dkt. No. 57.

The court further **ORDERS** that the parties must comply with the following schedule for filing briefs on the merits of the claims raised in Ground Sixty:

(1) the petitioner has **forty-five (45) days** from the date of this order to file his brief in support of his petition (he must file it in time for the court to receive it on the forty-fifth day);

(2) the respondent has **forty-five (45) days** after the clerk of court dockets the petitioner's initial brief to file the respondent's brief in opposition; and

(3) the petitioner has **thirty (30) days** after the respondent serves (puts in the mail, as reflected on the certificate of service) his opposition brief to file a

reply brief, if the petitioner chooses to file such a brief. (Again, the petitioner must file the reply in time for the court to receive it on the thirtieth day.)

Pursuant to Civil Local Rule 7(f), briefs in support of or in opposition to the habeas petition and any dispositive motions shall not exceed **thirty (30)** pages, and reply briefs may not exceed **fifteen (15)** pages, not counting any statements of facts, exhibits and affidavits.

Dated in Milwaukee, Wisconsin, this 21st day of February, 2017.

BY THE COURT:

_____
HON. PAMELA PEPPER
United States District Judge