UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

SCOTT EDWARD ZIEGLER,

        Petitioner,

  v.                                                                  Case No. 13-cv-0609-bhl

JASON BENZEL[1],

        Respondent.

**ORDER DENYING PETITION FOR WRIT OF *HABEAS CORPUS*, DISMISSING CASE, AND DECLINING TO ISSUE CERTIFICATE OF APPEALABILITY**

        On May 31, 2013, Scott Edward Ziegler filed a petition for writ of *habeas corpus* under 28 U.S.C. §2254. (ECF No. 1.) In his petition, Ziegler challenges his state court convictions for repeated first-degree sexual assault, interference with child custody, two counts of child enticement, second-degree sexual assault, seven counts of second-degree sexual assault of a child, and two counts of child abuse. Ziegler noted that his state petition for writ of *habeas corpus* was pending in the Wisconsin Court of Appeals and asked the Court to hold his federal *habeas* petition in abeyance until the state appellate courts finished reviewing his case. The Court initially granted Ziegler's request for a stay to allow for the conclusion of then-ongoing state court proceedings, ECF No. 13, but later entered an order concluding that he had exhausted

---

[1] The petitioner is currently housed in the Dodge Correctional Institution. https://appsdoc.wi.gov/lop/detail.do. Because Rule 2 of the Rules Governing Section 2254 Cases in United States District Courts requires the petition to name as the respondent the state officer who has custody of the petitioner, the Court has substituted the name of the current warden of the Dodge Correctional Institution. The Clerk is directed to change the caption of this case accordingly.

1

his federal *habeas* grounds in the Wisconsin state courts and setting a briefing schedule on his petition, ECF No. 54.[2]

On February 21, 2017, the Court granted in part and denied in part the respondent's motion to dismiss Ziegler's petition. (ECF No. 66.) The Court concluded that all but two of the Ziegler's claims were procedurally defaulted and set a briefing schedule for resolution of the remaining claims. Following the dismissal order, the remaining claims are: (1) whether the state trial court's order that Ziegler wear a "stun belt" on his leg and hidden from the jury's view under his clothes violated his due process rights and his right to counsel; and (2) whether the prosecution's introduction of Ziegler's mugshot photo to aid certain witnesses in identifying Ziegler (who had lost significant weight since his arrest) violated his due process rights. The parties have briefed both issues and, based on the record, the Court denies Ziegler's *habeas* petition, dismisses the case, and declines to grant a certificate of appealability.

## LEGAL STANDARD

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant *habeas* relief only if the state court decision was "either (1) 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,' or (2) 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Miller v. Smith*, 765 F.3d 754, 760 (7th Cir. 2014) (quoting 28 U.S.C. §2254(d)(1), (2)). A federal *habeas* court reviews "the decision of the last state court to rule on the merits of the petitioner's claim." *Charlton v. Davis*, 439 F.3d 369, 374 (7th Cir. 2006) (citation omitted).

---

[2] The Court also appointed Matthew Pinix to represent Ziegler for the limited purpose of helping him amend his petition to include a succinct statement of his claims. (ECF No. 44.) The Court relieved Pinix of his appointment on February 17, 2016. (ECF No. 54.)

"The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous. The state court's application of clearly established law must be objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (internal citations omitted). "A state court's determination that a claim lacks merit precludes federal *habeas* relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). "If this standard is difficult to meet, that is because it was meant to be." *Id.* at 102. "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* at 102-03 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979)).

## ANALYSIS

### A. The Wisconsin Supreme Court Did Not Err in Rejecting Ziegler's "Stun Belt" Claim.

Ziegler argues that the state courts violated clearly established federal law by requiring him to wear a stun belt[3] under his clothing during trial. (ECF No. 72.) He insists this ruling violated his due process rights under the 5th and 14th Amendments, and his right to be present during trial under the 6th Amendment. (ECF No. 72.)

The record is sparse on the reasons the trial court required Ziegler to wear the stun device but indicates that the device was not visible to the jury. (ECF No. 75-1, 75-2.) The stun device was addressed by the circuit court during a pre-trial status hearing:

> THE COURT: And unless otherwise noted, because he's in custody, when he's in front of the jury, he'll have the stun belt on. I don't know any other better word for it, but it's the device, the stun device, so that there's no problems.

---

[3] While referred to repeatedly as a stun belt, it appears the device was not a belt, worn around Ziegler's waist or chest, but rather a smaller, more discreet stun "garter" or strap around his lower leg. (ECF No. 75-2, 77.)

3

> MR. BIHLER: I would note my objection for the record, because I'm not aware – I don't know if that's your practice in all felony cases.
>
> THE COURT: No, it's not all – it is not a practice in felony cases. It's a practice where somebody's in custody, so that there need not be any shackles or manacles visible to anybody. A stun belt allows some restraint of a prisoner without being readily apparent. So unless you're planning on having very tight clothing for [the petitioner], it should be undiscernible to the jurors. It's an effort to make sure that that's the case. If you have a question or concern, please consult with the Sheriff's Department as to how it works. And if you have any problems or concerns, please raise them with me after that.
>
> MR. BIHLER: Who would be the contact person in the Sheriff's Department on that? I'm sorry.
>
> THE COURT: Captain McDonald, who's present right now today. So you can talk to him about that. All right. So we can take that up later, Mr. Bihler, if you have a problem or concern with that. It's an effort to make sure that there's no readily apparent restraints on [the petitioner]. It's commonly used when people are in custody.

(ECF No. 75-1.)

On the first day of trial, the trial judge confirmed that Ziegler was wearing the stun belt and that it was not visible. (ECF No. 75-2.) In commenting on borrowed clothing that Ziegler was wearing, the judge indicated he could not see the device, but "believe[d it was] on [the petitioner's] leg" and stated "there [were] no visible restraints." (*Id.*) To protect Ziegler from potential prejudice arising from his ill-fitting borrowed clothing, the judge directed that everyone would remain seated at times when they would normally rise. (*Id.*) The court then invited Ziegler's attorney to raise any other concerns about Ziegler's clothes. (*Id.*) After consulting with Ziegler, his counsel told the court, "We're fine with the clothes situation." (*Id.*) The court also questioned Ziegler directly about his ability to stand up and walk around with the borrowed clothes, and Ziegler responded that he could "walk okay" even though the court noted that Ziegler's pants were "a little bit big"—partially the result of Ziegler losing "about a hundred pounds" since entering jail. (ECF No. 75-2.) Ziegler made no mention of the stun device. (*Id.*)

4

The Supreme Court has long recognized that the use of *visible* shackles on a defendant during trial raises due process concerns. In *Illinois v. Allen*, 397 U.S. 337, 344 (1970), the Court addressed shackling as one of three potential ways for courts to control unruly defendants during trial. While acknowledging that binding and gagging a defendant might solve Confrontation Clause issues, the Court warned that "the sight of shackles and gags might have a significant effect on the jury's feelings about the defendant." *Id.* The Court also expressed concern that binding and gagging a defendant might impact a defendant's "ability to communicate with his counsel," one of the "primary advantages of being present at the trial." *Id.*

Several decades after *Allen*, the Supreme Court directly addressed the shackling of criminal defendants in *Deck v. Missouri*, 544 U.S. 622 (2005). While acknowledging that the use of shackles, when necessary to restrain an unruly defendant, was not necessarily constitutionally off limits, the Court identified specific limits on this practice:

> Thus, the Fifth and Fourteenth Amendments prohibit the use of physical restraints visible to the jury absent a trial court determination, in the exercise of its discretion, that they are justified by a state interest specific to a particular trial. Such a determination may of course take into account the factors that courts have traditionally relied on in gauging potential security problems and the risk of escape at trial.

*Deck*, 544 U.S. at 629. The Court explained the three-fold rationale underlying the rule: (1) "visible shackling undermines the presumption of innocence and the related fairness of the factfinding process;" (2) shackling could interfere with a defendant's "ability to communicate with his lawyer," thus implicating Sixth Amendment concerns about the defendant's right to counsel; and (3) visible shackles undermine the court's "formal dignity, which includes the respectful treatment of defendants" and "reflects a seriousness of purpose." *Id.* at 630-32 (internal quotations and citations omitted).

5

In affirming the circuit court's decision to require Ziegler to wear a stun device during his trial, the Wisconsin Supreme Court relied on the non-visible nature of the device. The Wisconsin Supreme Court explained that "the circuit court expressly found that [the petitioner] was wearing 'no visible restraints.'" (ECF No. 58-6.) It further noted that this finding was "supported by several photographs in the record, taken before jury selection." (*Id.*) The Wisconsin Supreme Court rejected Ziegler's speculation that the jury might have been aware of the stun device based on the trial judge having expressed his belief that "the stun belt was on [the petitioner's] leg." (*Id.*) It explained that Ziegler offered "no evidence that the stun belt was located anywhere else or was otherwise visible." (*Id.*) The Wisconsin Supreme Court also observed that neither Ziegler nor his counsel "expressed any concerns relating to the restraint. In fact, their only complaint about [the petitioner's] appearance was the bagginess of his borrowed clothing. It goes without saying that [the petitioner's] loose pants made it even less likely that the stun belt was visible underneath." (*Id.*) The Wisconsin Supreme Court thus accepted the lower court's findings that the device was not visible and rejected Ziegler's post-conviction challenges to the use of the stun belt.

This Court must presume the state court's factual determinations are correct absent clear and convincing evidence that they are unreasonable. *Schriro v. Landrigan*, 550 U.S. 465, 473-74 (2007). There is no such clear and convincing evidence here. While Ziegler speculates that the stun belt "could have been seen by and prejudiced the jury," ECF No. 72, this Court cannot overrule the Wisconsin Supreme Court's decision based on that speculation.

The Wisconsin Supreme Court heavily relied on the concealed nature of the stun belt, and for good reason. If the jury was unaware of the stun belt, they could not have drawn any impermissible inferences from it about Ziegler's guilt or innocence. Cases from this circuit and

others have repeatedly emphasized the importance of the restraint's visibility in the due process analysis. *See Stephenson v. Neal*, 865 F.3d 956, 958-59 (7th Cir. 2017) (holding that a criminal defendant's counsel was constitutionally ineffective and vacating a defendant's death sentence where counsel failed to object to a state court's ruling requiring the defendant to wear a stun belt visible to several jurors during the penalty phase of his murder trial); *United States v. Cooper*, 591 F.3d 582, 588 (7th Cir. 2010) ("Critically, these were not *visible* shackles. The record indicates instead that the jury could not see the shackles, because Cooper was sitting at a skirted table, rendering his ankles invisible."); *Wrinkles v. Buss*, 537 F.3d 804, 815 (7th Cir. 2008) ("If the jurors did see the stun belt during trial, then Wrinkles could demonstrate prejudice. . . . Thus, Wrinkles's habeas petition hinges on the belt's visibility."); *Sparks v. Dorethy*, No. 14-CV-1044, 2020 WL 1472128, at *7 (S.D. Ill. Mar. 26, 2020) ("Sparks seeks to extend this rule to circumstances where the restraints are not visible to the jury. No matter how compelling such an argument may be, the Supreme Court has not adopted that principle. Even though federal courts of appeal and Illinois state courts may have extended the reasoning of *Deck* to hidden shackles, federal habeas relief cannot rest on such lower court holdings."); *Leonard v. Warden, Ohio State Penitentiary*, 846 F.3d 832, 842 (6th Cir. 2017) ("For purposes of this appeal, however, 'visible' marks the key inquiry for us because a claim based on *Deck* 'rises or falls on the question of whether the stun belt was visible to the jury.'"). There is no reason this case should be treated differently. The record does not show any basis to find that any of the jurors were aware that Ziegler wore a stun device during trial.

Ziegler cites cases from the Eleventh and Ninth Circuits, *United States v. Durham*, 287 F.3d 1297 (11th Cir. 2002) and *Gonzalez v. Pliler*, 341 F.3d 897 (9th Cir. 2003), for the proposition that requiring a defendant to wear a stun belt can violate the Due Process Clause

7

even if there is no evidence the device was visible to jurors. (ECF No. 72.) But Ziegler cannot obtain *habeas* relief on the ground that the Wisconsin Supreme Court did not follow *Durham* and *Pliler*. Decisions from the federal circuit courts of appeals "cannot form the basis for habeas relief" because they "[do] not constitute 'clearly established Federal law, as determined by the Supreme Court.'" *Parker v. Matthews*, 567 U.S. 37, 48-49 (2012) (quoting 28 U.S.C. §2254(d)(1)). Even though Ziegler says that *Durham* and *Pliler* flow from the principles of *Allen* and *Deck*, ECF No. 77, the Supreme Court has said that circuit courts of appeals cannot "refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that [the Supreme Court] has not announced." *Lopez v. Smith*, 547 U.S. 1, 7 (2014) (quoting *Marshall v. Rodgers*, 569 U.S. 58, 64 (2013)). A right is not "clearly established" until the United States Supreme Court has made it "*concrete*." *Bland v. Hardy*, 672 F.3d 445, 448 (7th Cir. 2012) (citing *Wright v. Van Patten*, 552 U.S. 120, 125-26 (2008); *Carey v. Musladin*, 549 U.S. 70, 77 (2006)). And in this case, the United States Supreme Court has not held that the inquiries proposed by *Durham* and *Pliler* are required by the Due Process Clause.

      Indeed, the Court is not aware of any United States Supreme Court case clearly establishing that when a court forces a petitioner to wear a hidden stun belt, the court violates the petitioner's constitutional rights sufficiently to warrant *habeas* relief. *Deck* discusses the diminishing effect of visible shackles and "prisoners irons" on the constitutional right to counsel. *Deck*, 544 U.S. at 631. The United States Supreme Court, however, has not clearly established that the federal constitution precludes the use of stun belts not visible to the jury; it has not clearly established requirements regarding the use of stun belts that the circuit court judge in this case failed to take. The Court also is unaware of any facts in the record suggesting that the stun

belt actually interfered with Ziegler's ability to communicate with his attorney or participate in his own defense. *See id.* The Court will deny relief.

### B. The Use of Ziegler's Booking Photo Did Not Violate Due Process.

Ziegler also contends he is entitled to *habeas* relief based on the state court's admission during his trial of a photo taken of him at the time he was arrested and booked on the state court charges. (ECF No. 72.) He insists that the use of the mug shot photo "violated his 5th and 14th amendment rights to due process and a fair trial." (*Id.*)

Ziegler faces a particularly high hurdle in seeking federal *habeas* relief based on the state court's admission of the booking photo. The erroneous admission of evidence under state rules of evidence does not implicate federal *habeas* review "unless it is so egregiously prejudicial as to implicate constitutional principles." *Richardson v. Lemke*, 745 F.3d 258, 275 (7th Cir. 2014). Further, "[s]tate court evidentiary rulings only implicate the Due Process Clause when 'evidence is so extremely unfair that its admission violates fundamental conceptions of justice.'" *Id.* (quoting *Perry v. New Hampshire*, 565 U.S. 228, 237 (2012)). "[W]hen the state merely fails to limit the prosecution's evidence, the only constitutional principle to which the defendant can appeal is a catch-all sense of due process . . . and the appeal almost always fails." *Watkins v. Meloy*, 95 F.3d 4, 6-7 (7th Cir. 1996) (collecting cases). "If the evidence is probative, it will be very difficult to find a ground for requiring as a matter of constitutional law that it be excluded; and if it is not probative, it will be hard to show how the defendant was hurt by its admission." *Id.* at 7.

The record shows the trial court admitted a photo of Ziegler taken following his arrest in connection with the prosecution's efforts to confirm witness identifications of him. (ECF No. 75-4, 75-5, 75-6.) In response to questions from the court on the first day of trial, Ziegler

9

explained that he'd lost "about a hundred pounds" since entering jail. (ECF No. 75-2.) Several of the teenage girls that Ziegler was alleged to have sexually assaulted were able to identify him in court despite the weight loss. (ECF No. 75-3, 75-4, 75-5.) When one of his alleged victims could not, the prosecution used Ziegler's arrest photo and the witness identified the photo as a picture of Ziegler. (ECF No. 75-4.) The prosecution later had two other witnesses, Ziegler's former roommates, confirm that the photo depicted Ziegler as he looked in 2007, when the alleged crimes were committed. (ECF No. 75-5.) Two other witnesses who testified to Ziegler's sexual advances toward underage girls were unable to identify him in court, but confirmed that the arrest photo depicted Ziegler as he looked at the time they knew him. (*Id.*) Another witness identified Ziegler in the courtroom, but explained he looked "a lot thinner, [had] more hair and some glasses." (*Id.*) Finally, the prosecution introduced testimony from a police detective, who confirmed that the photo used to identify Ziegler was "taken in association with his arrest" on January 28, 2008. (*Id.*)

Ziegler contends the introduction of the photo is contrary to *United States v. Harrington*, 490 F.2d 487 (2nd Cir. 1973) and that the Wisconsin Supreme Court misapplied clearly established federal law when it upheld the use of the mugshot under *Harrington*. (ECF No. 72.) In *Harrington*, the Second Circuit ruled that a defendant was entitled to a new trial based on a district court's admission of mug shot photos in circumstances that unfairly "focused the jury's attention on the pictures" to the point at which they prejudiced the verdict. *Id.* at 495-97. The Second Circuit identified three factors to analyze in determining whether to admit a booking photo: (1) whether there is a "demonstrable need to introduce" the photo; (2) whether the condition of the photo "impl[ies] that the defendant has a prior criminal record;" and (3) whether

the manner in which the photo is introduced draws particular prejudicial attention to its source. *Id.* at 494.

Ziegler's *Harrington*-based challenge to the photo evidence faces several problems. First, because *Harrington* is a Second Circuit Court of Appeals decision and not a United States Supreme Court decision, it is not clearly established federal law within the meaning of AEDPA. Ziegler does not offer, and this Court is not aware of, any United States Supreme Court case holding that it is unconstitutional for a court to apply *Harrington* to analyze the use of a mugshot at a trial, or that the Wisconsin Supreme Court violated Ziegler's constitutional rights to due process when it found no error with the publication of his mugshot at trial.

Second, even if *Harrington* did apply, its requirements were satisfied. Given the evidence of his substantial weight loss and the changes to his physical appearance, there was demonstrable need for the prosecution to use the photo to aid in witness identification of Ziegler. *See Harrington*, 490 F.2d at 494. That some witnesses may have been able to recognize him after losing weight does not make it error to admit evidence to assist others who could not. Moreover, while the Wisconsin Supreme Court mistakenly stated that the photo was not published to the jury (an error respondent concedes), nothing in the record suggests the photos implied Ziegler had a prior criminal record. The record shows the prosecution laid a proper foundation by having arresting officers confirm that the photo was taken in connection with his arrest in the same case. And, the manner of the photo's introduction was not unfairly prejudicial. *See id.* The parties litigated the photo's admission outside the jury's presence, and the jury would hardly have been surprised that Ziegler had been arrested and booked into jail on the serious charges he was facing.

11

The Seventh Circuit faced a similar situation in a direct criminal appeal in *United States v. Roux*, 715 F.3d 1019 (7th Cir. 2013). In *Roux*, a jury convicted the defendant "of inducing or coercing a minor to create sexually explicit images in violation" of federal law. 715 F.3d at 1021. By the time of trial, the defendant had lost 30 to 40 pounds and the government therefore sought to introduce photographs taken of him at his arrest, showing him at the heavier weight in which he was depicted in the explicit images. *Id.* at 1027-28. The district court overruled the defendant's objection that the photographs would be unfairly prejudicial and admitted two forward-facing photos from his arrest. *Id.* On appeal, the Seventh Circuit affirmed the district court's admission of the photos. *Id.* at 1028. The Court of Appeals confirmed that it did not matter whether the jury might have been aware that the photos were photos from the defendant's booking. *Id.* at 1028-29. It explained that "it would not have been a surprise to [the jurors] that Roux had been arrested and photographed at [the time of his arrest], given that he had, after all, been indicted." *Id.*

Similarly, the use of Ziegler's booking photo in this case does not strike the Court as particularly prejudicial. First, if jurors correctly guessed that the photo was an arrest photo, given that Ziegler was on trial, it would hardly have been a surprise to them that he had been arrested. Second, the possibility that the jurors might have incorrectly inferred that the mugshot resulted from a prior or subsequent arrest, and then drawn an improper negative view of Ziegler, is too speculative to overturn his conviction. Third, trial witnesses clarified that the mugshot was taken in connection with Ziegler's arrest in January of 2008. While Ziegler complains that the language was not perfectly precise, the remote possibility that a misguided juror might have misconstrued the testimony and engaged in incorrect speculation is too remote a possibility on which to base *habeas* relief.

12

Moreover, Ziegler's prejudice arguments fall flat given the Wisconsin Supreme Court's correct observation that identity was not an issue at his trial. There was no dispute that Ziegler was the person the victims had accused of assaulting them, that he was the person in the booking photo, and that he lost significant weight since his arrest. Multiple victims and other witnesses identified him in court. His defense was that the victims were lying, not that they were mistaking him for someone else.

Finally, Ziegler asserts that the Wisconsin Supreme Court erred when it determined that the use of the booking photo at trial did not constitute an impermissible "showup." (ECF No. 72.) But the use of the mugshot was simply not a showup. A showup is a procedure where law enforcement officers show one suspect to a witness and ask the witness to make an identification. *See, e.g., Coleman v. City of Peoria, Ill.*, 925 F.3d 336, 348 n.14 (7th Cir. 2019). Courts have condemned showups because they can be "so unnecessarily suggestive and conducive to irreparable mistaken identification" as to violate due process. *United States ex rel. Kirby v. Sturges*, 510 F.2d 397, 402 (7th Cir. 1975) (quoting *Stoval v. Denno*, 388 U.S. 293, 302 (1967)). While some witnesses in this case could not identify Ziegler in court, they had identified Ziegler as their attacker. They identified him by name, they described him as the owner of "Twisted" and they described his residence. There was nothing improperly suggestive about the prosecutor's use of the mugshot to obtain the witnesses' identification of Ziegler.

The admission of his mugshot was not so prejudicial that it violated Ziegler's constitutional due process rights. The Court does not find the decision of the Wisconsin Supreme Court to be unreasonable, and therefore will deny relief on this claim.

### Certificate of Appealability

Under Rule 11(a) of the Rules Governing Section 2254 Cases, the Court must consider whether to issue a certificate of appealability. A court may issue a certificate of appealability only if the applicant makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). The standard for making a "substantial showing" is whether "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Peterson v. Douma*, 751 F.3d 524, 528 (7th Cir. 2014) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). The Court declines to issue a certificate of appealability, because no reasonable jurist could debate that Ziegler has not stated a ground for *habeas* relief under 28 U.S.C. §2254.

### CONCLUSION

The Court **DENIES** the petition for writ of *habeas corpus*, ECF No. 1.

The Court **DENIES TO ISSUE** a certificate of appealability.

The Court **ORDERS** that this case is **DISMISSED** and will enter judgment accordingly.

SO ORDERED on October 27, 2020.

                                        s/ Brett H. Ludwig
                                        BRETT H. LUDWIG
                                        United States District Judge